WESTERN MASS. INS. CO. (NORWICH & N. Y. TRANSP. CO. v.). See Case No. 10,363.

## Case No. 17,438.

### The WESTERN METROPOLIS.

[2 Ben. 212.] [1]

District Court, S. D. New York. March, 1868.

LIBEL FOR SEAMAN'S WAGES—ANSWER—PAYMENT AND RELEASE.

Where a libel was filed for seaman's wages, and the answer set up that the libellant had been paid in full before suit brought, and had released the vessel and her master and owners from all claim by a release under seal, and the libellant excepted to the answer because the date of the release was not set forth, nor the time when it was made, nor the consideration for which it was given, *held*, that the defence was payment, and the release was only evidence of it, and it was not necessary to state its date or consideration, or when it was given.

A. Nash, for libellant.
J. K. Hill, for claimants.

## Case No. 17,439.

### The WESTERN METROPOLIS.

[2 Ben. 399.] [1]

District Court, S. D. New York. May, 1868. [2]

COLLISION — STEAMER PORTING IN IGNORANCE OF SCHOONER'S COURSE—LOOKOUT—SPEED.

1. Where a schooner, heading west-southwest on her starboard tack, running over from Horseshoe shoal, near Nantucket, toward the Cross-Rip light, was struck on her starboard side by a steamer which had come up, bound east, till near the schooner, the steamer's helm having been at once ported, when the schooner was seen ahead, and kept so till the collision occurred: *Held*, that the steamer was in fault in porting, whether it was done wilfully, or in ignorance of the schooner's course, for, by that porting she followed up the schooner and struck her.

2. The evidence of the pilot of the steamer, that he saw the schooner from a quarter to a half mile off, is more reliable than that of other witnesses who came out suddenly into the darkness, that she could not be seen so far off.

3. On the evidence, the night was light enough to have enabled the steamer to discover the schooner sooner than she did, if a good lookout had been kept, and, if it was not light enough, the steamer was running at too great speed.

4. The schooner had a light set, and kept her course, and was not in fault: and that the steamer was liable for the collision.

Benedict & Benedict, for libellant.
W. R. Beebe and C. Donohue, for claimants.

BLATCHFORD, District Judge. This is a libel for a collision, which occurred about four o'clock a. m., on the 17th of March, 1864, between the schooner Triumph, owned by John Low, Jr., which was bound from Gloucester, Massachusetts, to New York, with a cargo of fish, and the steamer Western Metropolis, a side-wheel steamer, bound from New York to Boston. The collision took place a short distance east by south, or east-southeast, from the Cross-Rip lightship, near the Nantucket

---

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]
[2] [Affirmed in Case No. 17,441.]

shoals. The schooner was, at the time, close-hauled on her starboard tack, for the purpose of beating through the channel to the north-ward of the lightship, the wind being north-west by west, and the schooner heading west-southwest, which was one point to the leeward of what would have been her proper course at that place with a fair wind. The steamer struck the schooner on the starboard side of the schooner, and the schooner very soon sank and was totally lost. The crew of the schoon-er consisted of her captain, a mate, a steward, and three seamen. The captain was at the wheel. Two of the seamen were killed, or drowned by the collision. The captain, the mate, and the remaining seaman, have been examined as witnesses.

The person who had charge of the steamer, in the capacity of pilot, at the time, and who was at her wheel in the pilot-house, giving or-ders as to steering her, was not a licensed pilot, and was hired as pilot for the steamer for that particular trip. He had never been permanently employed on a steamer as a pilot, and it does not appear that he had ever before piloted a vessel through the passage where the collision took place, or ever before been through that passage. He says, that, at the time of the collision, it was dark and hazy; that the man on the forecastle reported a sail right ahead; that he then told the quarter-master, who was with him at the wheel, to port the wheel, and rang the bells to stop and back the engine, and did this as quickly as it could be done; that he saw the schooner one and a half or two minutes before she was struck, and that the schooner was not more than from a quarter to a half of a mile off when he first saw her; that he used his night glass, and with it got a full view of the schooner; that, as soon as he heard the report of the lookout, he rang the bells, and put the glass to his eye; and that he saw the schooner with the naked eye, before he used the glass.

The master of the steamer says, that the night was dark and hazy; that he was in his berth in the pilot-house, awake, when he heard the report of the lookout, "Sail on the port bow;" that the pilot gave orders to port the helm instantly, and then rang the bells to stop and back; that he, the master, jumped to the wheel, and found it hard-a-port; and that the collision took place about the time the last bell was struck.

The quarter-master, who was at the wheel with the acting-pilot, says, that the night was dark, thick, and hazy, at the time; that the lookout on the forecastle cried out, "A sail ahead;" and that the order was then given, as quickly as possible, to port and to stop and back.

A hand, who was on the bridge, says, that the report was "A sail;" that the night was dark and cloudy; that, when the sail was re-ported, the schooner was the steamer's length off; and that the wheel of the steamer was ported, and her engine stopped and backed.

The lookout on the forecastle, who reported the sail, says, that the night was rather foggy, and there was quite a vapor arising from the water; that, when he caught sight of the ves-sel, it was too thick for him to tell what sort of a vessel she was; and that, just before the steamer struck her, he saw that her boom was over to her port side.

It is manifest, on this evidence, that the steamer's helm was ported in entire igno-rance on the part of those on board of the steamer as to which way the schooner was heading, or even what sort of a vessel she was. This was a fault on the part of the steamer, and it was a fault which led to the collision, for, it is apparent, that, if the steam-er had not ported, she would have gone under the stern of the schooner. The schooner kept on her course, close-hauled, heading west-southwest, and the steamer, by porting, and keeping her helm hard-a-port, persistently fol-lowed up the schooner, and ran into her and sank her. Whether this was done by the steamer wilfully or ignorantly makes no dif-ference. If she knew how the schooner was heading, and then ported, the act was wilful, and was a fault, as she was bound to keep out of the way of the schooner. If she did not know how the schooner was heading, and ported in ignorance, the act was equally faulty. It grew out of the incompetence and mismanagement of the man at the wheel.

The story as to the porting is fully confirm-ed by the testimony of those on board of the schooner. They saw the steamer's lights some distance off, bearing west half south, just after the schooner had changed to the tack she was on at the collision. They first saw her two white lights, one high up and one on the bow, the two being in range. Then, as the schooner went on heading west-southwest, the steamer's green light came in-to view, then her red light came into view, so that both the green and the red were visi-ble, and then the green disappeared and the red alone was visible, and this continued so till the collision. This shows that the steam-er was swinging to her own starboard on a port helm, and swinging toward the schooner as the schooner went on close-hauled. The testimony from both vessels entirely concurs, and shows that this porting of the steamer's helm caused the collision. This is sufficient to condemn the steamer in damages. The Louisiana [Case No. 8,537].

The only defence set up in the answer is, that the schooner changed her course, and that, as soon as the schooner could, with all proper caution, be seen from the steamer, the steamer was stopped and backed, and every exertion made to avoid the collision. It is proved that the schooner did not change her course.

An effort was made on the part of the claimants to show that the night was so dark and thick and hazy that the schooner could not have been seen at any greater distance than she was seen. There are several an-swers to this position: (1) She was, in fact,

seen at a distance far enough off to have avoided her, if the steamer's helm had not been wrongfully put to port. (2) The night was not so dark or hazy as to prevent the schooner being seen at a greater distance, if a proper lookout had been kept on the steamer. (3) If the night was as. thick and hazy as claimed. the steamer was running too fast.

I regard the evidence of the passenger, the engineer. and the storekeeper, as to the thickness of the night, as of very little weight. They came out suddenly into the darkness, under circumstances which made it impossible for them to judge as to how far a vessel could be seen. The evidence of the pilot. as to how far off he did in fact see the vessel, is much more reliable. He had been out in the night, and his eyes were gauged to its condition. He does not pretend, nor does any one on the steamer, that the collision would have happened if the steamer had not ported, after seeing the schooner, in ignorance of her course.

That the night was not a foggy one, is shown, also, negatively, by the fact that the steamer was not using her steam-whistle. No witness pretends that she was, except the lookout on the steamer, who, on his examination in open court. after the case had closed, he not having heard any of the testimony of the other witnesses, or any part of the trial, fabricated the story that the steamer kept blowing her fog whistle because the fog was so thick.

"I am also satisfied, from the evidence, that the schooner had a light set in her starboard fore-rigging, and properly burning at the time of the collision.

There must be a decree for the libellants, with a reference to a commissioner to ascertain the damages.

[NOTE. On appeal to the circuit court the above decree was affirmed. Case No. 17,441. An appeal was taken to the supreme court, and, on motion and affidavit, commissions were issued therefrom to take further testimony. See 12 Wall. (79 U. S.) 389. It does not appear, however, that the cause was ever brought to a hearing.]